(Reap. Dec. 10357)

## C. J. TOWER & SONS OF BUFFALO, INC. *v.* UNITED STATES

Entry No. 20155, etc.

(Decided October 31, 1962)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Henry J. O'Neill* and *Samuel D. Spector*, trial attorneys), for the defendant.

OLIVER, Chief Judge: This is an appeal for reappraisement of the values returned by the United States appraiser at Buffalo on certain screenings contained in 32 shipments of oats, exported from Canada on various dates between May 10, 1957, and June 26, 1958.

The oats-and-screenings mixtures involved in the shipments were of three different grades, known as Extra No. 1 Feed Oats, No. 3 Canada Western Oats, and No. 1 Feed Oats. The oats had been cleaned prior to importation to produce commercially "clean" oats,

but, at the time of importation, still contained varying percentages of screenings.

Although the oats-and-screenings mixtures were imported and entered without segregation of the components, they were described on the entries as separate items, and separate values were stated for each. They were also separately appraised, the appraiser returning the same value per bushel for the screenings as he did for the oats in each instance.

There does not seem to be any dispute that, for tariff purposes, the imported merchandise is properly to be considered as though it were two separate tariff commodities, to wit, oats, dutiable at a specific rate of duty under the provision therefor in paragraph 726 of the Tariff Act of 1930, as modified, and screenings, dutiable at an ad valorem rate of duty under the provision therefor in paragraph 731 of the same act, as modified.

The plaintiff concedes that the value returned by the appraiser for the oats was correct, and there is nothing in the record to indicate any contrary or different view by the defendant. The case was treated by both parties as though the imported merchandise consisted of two separate commodities, to wit, oats and screenings, and, in effect, the issue was limited to the correct value, for duty purposes, of the screenings alone.

The parties are in agreement that the correct basis of value for the merchandise was export value, as defined in section 402(d), Tariff Act of 1930, as originally enacted, or as defined in section 402(b) of the said act, as amended by the Customs Simplification Act of 1956, depending upon whether the merchandise was imported before, or on or after, the effective date of the said Customs Simplification Act, February 28, 1958. It is the plaintiff's claim that, in each instance, the value of the screenings for duty purposes was lower than that returned by the appraiser.

There is no dispute as to the amount of screenings contained in each shipment, and, in fact, it has been stipulated by counsel for the parties—

* * * that the respective quantities, or percentages, of screenings and oats could be readily ascertained by the customs offices without physical segregation, and that such respective quantities, or percentages, are those shown in red ink on the entries, or invoices, or both. [Tr. pp. 6-7.]

The proof offered on behalf of the plaintiff as to the values of the screenings consists of the affidavit of one J. T. Dallas, who identifies himself therein as the executive vice president of the exporter at the times here pertinent. The affidavit was received in evidence over the objections of counsel for the defendant as plaintiff's exhibit 2.

According to his statements, Mr. Dallas had been in the business of purchasing and selling grains of all kinds, or in official Government

position as Commissioner of the Canadian Wheat Board, since 1926. His affidavit establishes that the three grades of oats involved in the shipments at bar are common designations in the grain trade and that such grades of oats contain varying percentages of screenings, consisting of foreign materials, damaged oats, wild oats, and various substances other than sound, cultivated oats.

It appears that, after harvesting, oats are cleaned to produce commercially "clean" oats, during which process a certain part of the harvested product known as "refuse screenings" is removed, the remainder being one of the commercial grades of oats. It further appears that not all of the screenings contained in the oats as harvested are removed at this time, but that a portion remains in the oats, which are, nevertheless, salable as commercial grades of oats.

It is established that the screenings which have been removed from the oats during the cleaning process are of the same nature and character as those which remain in the oats, and, if the latter were removed from the oats, they would be commercially interchangeable with those which had been removed, and salable as refuse screenings. Refuse screenings have value as such and are bought and sold under that name.

The affiant declares that, at the times here pertinent, refuse screenings were offered and sold in the principal Canadian trade market for grains, Winnipeg, Manitoba, f.o.b., Fort William and Port Arthur, the ports of exportation, under the terms and conditions set forth in the respective export value provisions of the statute at prices which he listed on the third and fourth pages of his affidavit.

Counsel for the defendant has characterized all of the statements made by the affiant with reference to the shipments here in issue as not being within his personal knowledge, as being predicated upon hearsay, and as being conclusions of fact without any evidentiary facts in support thereof. Specifically, counsel contends that the nature and character of the screenings at bar were not within the personal knowledge of the affiant, there being no evidence that he ever saw the shipments here involved.

Further, it is pointed out that the prices stated by the affiant to be those applicable to refuse screenings at the stated times are based upon assumptions as to the quality, quantity, and kind of screenings involved and that no showing is made as to the facts upon which he concluded that the prices were as he stated.

I am of the opinion that counsel for the defendant has indicated defects in the proof submitted by the plaintiff sufficient to prevent judgment in its favor.

The merchandise here undergoing reappraisement is screenings contained in certain shipments of oats. While there are statements in the affidavit, plaintiff's exhibit 2, which indicate that refuse screenings which are removed from oats after harvest are of like character

and equal value to those which remain in the said oats, there is nothing in the record which establishes that *all* refuse screenings are alike or similar in character and value and that there are no differences in quality or kind of individual lots of screenings which are reflected in their values.

In the brief filed on behalf of the plaintiff, it is urged that the refuse screenings contained in the importations at bar are similar to other refuse screenings bought and sold in the Canadian grain market. It has not, however, been shown that all refuse screenings are fungible goods, that is to say, are of a given class wherein one specimen is as good as, or the same as, or similar to, another, and the value of one specimen is the same as that of any other. It is not within the court's judicial knowledge to say that quality and kind are or are not factors which affect the value of refuse screenings. On the record presented, it cannot be found that the screenings contained in the importations at bar are necessarily similar to other screenings offered or sold in the foreign market.

With respect to the prices listed by the affiant as those at which refuse screenings were offered and sold in the Canadian market at the times in question, it is noted that the prices listed are "based upon my experience in the grain and screenings trade." There is nothing in the record to show whether the prices listed by the affiant were of actual sales of which he had knowledge, or whether there was a formal market for screenings, the prices in which were reported or published, or, in short, whether any specific facts existed which led him to believe and assert that the prices he listed were the correct prices.

The statements as to offered and selling prices are conclusions of ultimate, issuable facts. Other than by rather broad reference to his experience, the source and quality of the affiant's knowledge as to the prices are not given, and I am satisfied that his experience with respect to the particular prices he listed is not sufficiently delineated in the record to support their acceptance as the actual offered and selling prices of refuse screenings. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

For the foregoing reasons, I hold that plaintiff has not made out a *prima facie* case in favor of the values claimed by it sufficient to overcome the statutory presumption of correctness attaching to the values returned by the appraiser.

On the record before me, I find as facts:

(1) That the merchandise involved in the instant appeal for reappraisement consists of screenings contained in oats, exported from Canada during the period from May 10, 1957, to June 26, 1958.

(2) That, at the times referred to, merchandise such as or similar to that here involved was freely offered for sale, or freely sold, under the terms and conditions stated in section 402(d), Tariff Act of 1930,

as originally enacted, or section 402(b) of the same act, as amended by the Customs Simplification Act of 1956.

(3) That plaintiff has failed to establish that merchandise which it claims was so freely offered for sale or sold was such as or similar to that in issue, and has failed to establish the correctness of the prices at which it claims said merchandise was so offered or sold.

I conclude as matters of law:

(1) That export value, as defined in section 402(d), Tariff Act of 1930, as originally enacted, or as defined in section 402(b) of the said act, as amended by the Customs Simplification Act of 1956, depending upon whether the merchandise was imported before, or on or after, the effective date of the said Customs Simplification Act, February 28, 1958, is the proper basis for the determination of the values of the involved screenings, and

(2) That, by operation of section 2633, title 28, United States Code, the values found by the appraiser are the values of the merchandise.

Judgment will issue accordingly.